**Filed**
Supreme Court of Guam, Clerk of Court



# IN THE SUPREME COURT OF GUAM

**DAVID WAATHDAD; KINASIRO K. ALBERT; RENSPER ALPET; IASINDA R. ALPET; SINO ANIS; FLORENZO H. ATAN; THANKYOU ERAM; ROSENTA IFRAIM; SMITHER D. EZRA; SILIHNER G. FRED; MARGARET L. FANOWAY; MARTINA FINE JOSEPH, Individually and as the Special Administrator of the Estate of Rainis Rangi, Deceased; PAUL KARGON; MARTINA RUEMAU; DARIA KOSAM; JOHN LIGMAW; MARIA T. LIGMAW; MARSALA D. MARTIN; SONTAG H. MARTIN; T'NEL MORI; LYNN OTWII AKA "LYNN OTIWII"; TAKASHI C. UNTUN; MARTIN RAYMOND; INOCENTA RAYMOND; ALEX H. RUBEN; FELISA B. RUBEN; KEROPIM SHAREP; TOMININA TAKEIOSHY; JENNIFER D. TOPACIO; GERRY L. TOPACIO; DIVINA VAIAU; STANLEY YANFAG; and ROSEMARY YANFAG,**
Plaintiffs-Appellants,

**v.**

**CYFRED, LTD.,**
Defendant-Appellee.

Supreme Court Case No. CVA19-013
(consolidated with CVA20-006)
Superior Court Case No. CV0735-18

**OPINION**

**Cite as: 2021 Guam 24**

Appeal from the Superior Court of Guam
Argued and submitted on April 6, 2021
Via Zoom video conference

**E-Received**
12/22/2021 11:23:46 AM

Appearing for Plaintiffs-Appellants:
Wayson W.S. Wong, *Esq.*
Law Offices of Wayson Wong, APC
GCIC Bldg.
414 W. Soledad Ave., Ste. 808
Hagåtña, GU 96910

Appearing for Defendant-Appellee:
Curtis C. Van de veld, *Esq.*
The Vandeveld Law Offices, P.C.
Gill & Perez House
123 Hernan Cortes Ave.
Hagåtña, GU 96910

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, J.:**

[1]      Plaintiffs-Appellants David Waathdad *et al.* (collectively, the "Homeowners") appeal five separate and related orders arising from the Superior Court's grant of partial summary judgment for Defendant-Appellee Cyfred, Ltd. ("Cyfred"), which held that the Homeowners could not offset their unliquidated, contingent, and non-mutual claim for alleged attorney's fees against Cyfred's liquidated claims. The related orders include: an order dissolving a preliminary injunction that had enjoined Cyfred from conducting non-judicial foreclosures of the Homeowners' lots; an order denying the Homeowners' motion for reconsideration; an order finding entry of judgment appropriate, and the final judgment. The Homeowners' central claim is that the trial court erred in granting partial summary judgment because there were material disputes of fact on whether Cyfred was insolvent to allow an equitable exception to the general rules of setoff.

[2]      We affirm the grant of partial summary judgment and all the related orders originating from it.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[3]      This appeal centers on a grant of partial summary judgment, the ramifications of which led to the dissolution of a preliminary injunction that had enjoined Cyfred from conducting non-judicial foreclosures of lots in the Gill-Baza Subdivision ("Subdivision") belonging to some of the Homeowners. It also arises from a settlement agreement reached between the parties, and others, following years of litigation over Cyfred's failure to install sewer lines on other lots it sold to the Homeowners in the Subdivision. *See United Pac. Islanders' Corp. v. Cyfred, Ltd.*, 2017 Guam 6; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cyfred, Ltd.*, 2015 Guam 7; *Sananap v. Cyfred, Ltd.*

(*Sananap IV*), 2011 Guam 22; *Sananap v. Cyfred, Ltd.* (*Sananap III*), 2011 Guam 21; *Yanfag v. Cyfred, Ltd.*, 2009 Guam 16; *Abalos v. Cyfred, Ltd.* (*Abalos II*), 2009 Guam 14; *Sananap v. Cyfred, Ltd.* (*Sananap II*), 2009 Guam 13; *Sananap v. Cyfred, Ltd.* (*Sananap I*), 2008 Guam 10; *Abalos v. Cyfred, Ltd.* (*Abalos I*), 2006 Guam 7. Unlike prior cases, this appeal concerns determinations over the Homeowners' ability to offset amounts they believe Cyfred owes them in attorney's fees against payments they owe Cyfred for other lots in the Subdivision sold to them; it does not concern the Homeowners' original lots, which have been the subject of prior litigation. Because of the protracted legal and factual history of litigation about the Subdivision, we recite only those facts pertaining to the specific lots and that are most relevant to this appeal.

[4]      As part of a settlement agreement reached in prior litigation, the Homeowners each acquired a second lot[1] in the Subdivision via promissory notes they executed with Cyfred.[2] The promissory notes required that each of the Homeowners pay Cyfred $4,500 at $450 per year over ten years. The Homeowners collectively owed Cyfred $11,700 per year (26 lots x $450 per year). To secure their respective promissory notes, the Homeowners obtained mortgages in favor of Cyfred, which allowed Cyfred the option to foreclose by non-judicial foreclosure the Homeowners' second lots upon a default under the respective promissory notes and mortgages.

[5]      In March 2017, the Homeowners "decided to offset about $49,700 in attorney's fees Cyfred should owe" to them rather than pay the annual payments on the promissory notes for the second lots. Record on Appeal ("RA"), tab 1 at 4 (Compl., July 26, 2018). The Homeowners' attorney wrote to Cyfred to propose a settlement to avoid any foreclosures of the second lots and to offset the $11,700 in annual payments they owed Cyfred with the amount they believed they were owed

---

[1] The second lots were made available to the Homeowners as part of an arrangement involving the installation of a sewer system on the original lots.

[2] The settlement agreement reached between the Homeowners and Cyfred also provided that a prevailing party suing for breach of the agreement may recover his attorney's fees.

in attorney's fees for other litigation. In response to the Homeowners' nonpayment of the amounts due to Cyfred under their respective notes and mortgages, Cyfred completed non-judicial foreclosures of some of the Homeowners' properties.[3]

[6]     The Homeowners then sued Cyfred and requested an injunction enjoining it from conducting further non-judicial foreclosures on their second lots and from disposing of or transferring the second lots it had bought until their title claims in other litigation were finally adjudicated. In their complaint, the Homeowners suggested that Cyfred owed them more than $100,000 in attorney's fees and costs for Superior Court Case No. CV0934-15 ("*UPIC I*") and Superior Court Case No. CV0073-16 ("*UPIC II*")[4] and potential future attorney's fees in Superior Court Case No. CV0426-18. Cyfred answered the complaint raising several affirmative defenses and stating that the Homeowners' "claims for a set off were improper, unwarranted and not supported by any legitimate debt owed to [the Homeowners] by Cyfred." RA, tab 55 at 2 (Answer, Jan. 9, 2019). Cyfred also stated that it "does not owe the [Homeowners] any attorney's fees and did not owe them attorney's fees when they breached their obligations to Cyfred under their respective promissory notes and mortgages." *Id.*; *see also* RA, tab 56 at 2 (Decl. Francis Gill, Jan. 11, 2019) ("There is no outstanding award of any kind and no judgment for attorney's fees whatsoever which is currently owed by Cyfred to any of the [Homeowners] in any action or in any court; . . . Cyfred does not owe any of the [Homeowners] any amount for attorney's fees or any other debt . . . .").

---

[3] Cyfred also completed twelve non-judicial foreclosures for more of the defaulted notes and mortgages following the trial court's order that dissolved the previously issued preliminary injunction enjoining Cyfred from conducting such foreclosures. Cyfred bought all the twelve lots in the June 2019 foreclosure sales and admitted to purchasing the lots for the 2018 sales.

[4] *UPIC II* reached this court twice as Supreme Court Case Nos. CVA17-016 and CVA18-003. Case No. CVA17-016 was dismissed on January 11, 2018, and CVA18-003 was dismissed on May 3, 2018.

**[7]**      Because of a motion for preliminary injunction brought by the Homeowners, the trial court, finding that the Homeowners would suffer irreparable injury, enjoined Cyfred from conducting any further non-judicial foreclosures and from disposing of already-foreclosed properties. In doing so, the trial court expressed concerns that the Homeowners' setoff claims were "dubious" considering they have not prevailed in the specific legal actions they cited in their complaint. RA, tab 18 at 5 (Dec. & Order Mot. Prelim. Inj., Sept. 5, 2018).

**[8]**      After the preliminary injunction was granted, Cyfred moved for partial summary judgment, arguing the Homeowners' central cause of action asserting a setoff fails as a matter of law. The trial court agreed with Cyfred, granted their motion, and held that "[u]nder general rules governing setoffs, [the Homeowners] may not assert a setoff when the attorney's fees that Cyfred, a solvent entity, may owe is unliquidated, contingent on other litigation, and involves non-mutual parties, while the debt [the Homeowners] owe Cyfred is liquidated." RA, tab 73 at 2 (Dec. & Order Def.'s Mot. Partial Summ. J. ("Summ. J. Order"), Mar. 8, 2019). The trial court also refused to apply exceptions advanced by the Homeowners to the general rules on setoffs that: (1) allow setoff of unliquidated damages when the party it is asserted against is insolvent; and (2) allow a contingent unliquidated claim for setoff to be pleaded as a permissive counterclaim. In making these determinations, the trial court took judicial notice that in *UPIC I*[5] and *UPIC II*, which were brought by some but not all Homeowners, the parties challenging Cyfred did not receive a judgment or ruling in their favor for attorney's fees and that both matters were dismissed and closed. The trial court also took judicial notice that Superior Court Case No. CV0426-18, which involved some of the Homeowners, was still pending.[6]

---

[5] In *UPIC I*, the trial court specifically determined that the plaintiffs in that matter, some of whom comprise the Homeowners in this appeal, were not prevailing parties entitled to an attorney's fees award.

[6] We take judicial notice of the dispositions in *UPIC I* and *UPIC II* and the pending nature of CV0426-18, all of which the Homeowners rely on as a basis for their setoff claims. *See* Guam R. Evid. 201; *see also People v.*

[9]     Because of the March 8, 2019 Decision and Order on Cyfred's moton for partial summary judgment ("Summary Judgment Order"), the trial court dissolved the preliminary injunction that had enjoined Cyfred from conducting non-judicial foreclosure sales of the Homeowners' second lots and from disposing of already-foreclosed properties.  Cyfred then continued non-judicial foreclosure sales of some of the Homeowners' second lots, bought the lots itself, and recorded the resulting foreclosure deeds with itself as the grantee.

[10]     The Homeowners moved for reconsideration of the trial court's Summary Judgment Order. However, the court denied the motion, finding that the Homeowners failed to establish grounds for reconsideration.  The Homeowners appealed that decision, the Summary Judgment Order, and the order that dissolved the preliminary injunction.  Cyfred later moved for entry of judgment in the trial court, to include an award of damages, attorney's fees, and costs caused by the injunction. The trial court granted Cyfred's motion and entered a final judgment for Cyfred,[7] which the Homeowners separately appealed.  The court consolidated these appeals into the above-captioned matter.

## II.  JURISDICTION

[11]     This court has jurisdiction over appeals from a final judgment of the Superior Court of Guam.  S*ee* 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-57 (2021)); 7 GCA §§ 3107, 3108(a) (2005).

## III.  STANDARD OF REVIEW

[12]     A trial court's decision granting summary judgment is reviewed *de novo*.  *Island Eye Ctr., Inc. v. Lombard*, 2020 Guam 32 ¶ 9; *Abalos v. Cyfred Ltd.*, 2006 Guam 7 ¶ 12.  In deciding a

---

*Corpuz*, 2019 Guam 1 ¶ 4 n.2; *In re N.A.*, 2001 Guam 7 ¶ 58 ("It is proper to take judicial notice of court files." (citing *In re S.S.*, 334 N.W.2d 59, 61 (S.D. 1983))).

[7] In entering judgment, the trial court awarded Cyfred attorney's fees and costs, but deferred setting any amount to such award pending disposition of the appeal.

summary judgment motion, the court reviews the evidence in a light most favorable to the non-moving party. *Taitano v. Lujan*, 2005 Guam 26 ¶ 11. Legal conclusions of the trial court are reviewed *de novo*; however, factual determinations are reviewed for clear error. *Bautista v. Torres*, 2017 Guam 17 ¶ 18 (per curiam).

[13] We review a trial court's denial of a motion for reconsideration for an abuse of discretion. *Camacho v. Perez*, 2017 Guam 16 ¶ 9; *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 10. We find an abuse of discretion where the trial court's decision "is based on an erroneous conclusion of law or where the record contains no evidence on which the judge could have rationally based the decision." *Guam Bar Ethics Comm. v. Maquera*, 2001 Guam 20 ¶ 8 (quoting *Midsea Indus., Inc. v. HK Eng'g, Ltd.*, 1998 Guam 14 ¶ 4).

## IV. ANALYSIS

[14] On appeal, the Homeowners raise two sets of arguments stemming from the trial court's alleged errors in the Summary Judgment Order (and its related orders) and in the court's June 20, 2019 Decision and Order on the Homeowners' motion for reconsideration ("Reconsideration Order"). As to the Summary Judgment Order, the Homeowners argue the trial court prejudicially erred in granting summary judgment for Cyfred because: (1) there were genuine issues of material fact on whether the insolvency exception allowing the Homeowners' alleged setoff applied; and (2) the trial court erroneously determined as a matter of law that Guam Rule of Civil Procedure 13(b)[8] was inapplicable. Appellants' First Am. Br. at 19-20 (July 12, 2020). Regarding the Reconsideration Order, the Homeowners maintain the trial court erred in refusing to find applicable other grounds for their setoff claim—specifically, their claim of equitable estoppel and

---

[8] Rule 13(b) concerns permissive counterclaims and states: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Guam R. Civ. P. 13(b).

their argument that Cyfred's ability to potentially become insolvent is a special ground for equitable relief allowing setoff. *Id.* at 19. In so arguing, the Homeowners contend that later orders arising from the Summary Judgment Order, such as the order dissolving the preliminary injunction, the Reconsideration Order, the trial court's decision and order for entry of judgment, and the judgment, be set aside and the preliminary injunction restored. *Id.* at 20. We review the issues related to the Summary Judgment Order *de novo*, before turning to whether the trial court abused its discretion in denying the Homeowners' reconsideration motion.

## A. Summary Judgment Was Proper[9]

[15]    In the Summary Judgment Order, the trial court determined that the Homeowners' claims for setoff were not a valid cause of action because the amount "Cyfred, a solvent entity, may owe [the Homeowners] is unliquidated, contingent on other litigation, and involves non-mutual parties, while the debt [the Homeowners] owe Cyfred is liquidated." RA, tab 73 at 2 (Summ. J. Order). The trial court refused to apply two exceptions, adopted in other jurisdictions, to the general rules of setoff that: (1) allow setoff of unliquidated damages when the party it is asserted against is

---

[9] As a preliminary matter, the Homeowners suggest the trial court "erroneously and prejudicially placed [the] burden on the Homeowners as to the applicability of the equitable exceptions to the setoff rule." Appellants' First Am. Br at 22 (July 12, 2020). However, the Homeowners confuse the burden-shifting mechanism. At the onset, Cyfred, as the movant, "bears the initial burden to show [on summary judgment] that undisputed facts in the record support a *prima facie* entitlement to the relief requested." *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2020 Guam 20 ¶ 35 (quoting *Hawaiian Rock Prods. Corp. v. Ocean Hous., Inc.*, 2016 Guam 4 ¶ 27). "If the movant satisfies this burden, the burden then shifts to the defendant to show that there exists a material question of fact that would preclude the grant of summary judgment." *Id.* Relying on the claims by the Homeowners, which did not initially allege that Cyfred was insolvent, Cyfred moved for partial summary judgment as to the setoff issue. The burden therefore shifted to the Homeowners to set forth specific facts showing there to be a genuine issue of material fact for trial. *Id.* To defend their argument as to the burden on summary judgment, the Homeowners cite a string of cases to suggest that it was Cyfred's burden "to show that there were no genuine issues of material facts that any of the equitable exceptions did not apply." Appellants' First Am. Br at 22. Yet, all the authorities they cite in defense of their argument involve the burden placed on a moving party when the non-moving party has alleged certain affirmative defenses. *See Potter Bank & Tr. Co. v. Massey*, 171 N.Y.S.2d 27, 29 (Sup. Ct. 1958); *Coral Wood Page, Inc. v. GRE Coral Wood, LP*, 71 So. 3d 251, 253 (Fla. Dist. Ct. App. 2011); *Mathews v. Glacier Gen. Assurance Co.*, 603 P.2d 232, 237-38 (Mont. 1979). There is therefore no procedural parallel between those cases and the instant appeal because the Homeowners did not raise setoff as an affirmative defense or raise Cyfred's supposed insolvency in their complaint.

insolvent; and (2) allow a contingent unliquidated claim for setoff to be pleaded as a permissive counterclaim. On these two issues, the Homeowners argue there are genuine issues of material fact as to Cyfred's insolvency and that the trial court erroneously determined the Homeowners could not avail of Rule 13(b). Appellants' First Am. Br. at 19-20. Cyfred, on other hand, contends the Homeowners do not have a "colorable claim to the attorney's fees underlying their setoff claims," and that even if they did, the insolvency exception does not apply because Cyfred is solvent. Appellee's Br. at 22, 28-30 (Nov. 7, 2019). They also argue the Homeowners could not rely on Rule 13(b) since they brought their claim for setoff as an originating claim. *Id.* at 37-39. We agree with Cyfred and find that summary judgment was proper, that the Homeowners' claim for setoff fails as a matter of law, and there is no basis for applying either exception advanced by the Homeowners.[10]

### 1. Standard for summary judgment

[16]     Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Guam R. Civ. P. 56(c); *see also Camacho*, 2017 Guam 16 ¶ 12. "A genuine issue of material fact exists when there is sufficient evidence to establish a factual dispute that must be resolved by a fact-finder." *Camacho*, 2017 Guam 16 ¶ 12 (citing *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7 (per curiam)).

---

[10] Because summary judgment was proper, Cyfred's motion to set aside the non-judicial foreclosure sales and foreclosure deeds Cyfred conducted on twelve lots after the preliminary injunction was lifted is moot. Furthermore, unlike in *Sananap II*, we need not dispose of this motion to protect our appellate jurisdiction, as the Homeowners allege, because we would have jurisdiction otherwise, *see* 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-57 (2021)); 7 GCA §§ 3107, 3108(a) (2005), and the matter on appeal primarily concerns the grant of partial summary judgment, not the grant or denial of injunctive relief.

[17]     In reviewing a motion for summary judgment, "[the] court must view the evidence and draw inferences in a light most favorable to the non-movant." *Id.* ¶ 13 (quoting G*ov't of Guam v. Gutierrez*, 2015 Guam 8 ¶ 26); *Nat'l Union*, 2015 Guam 7 ¶ 32 (quoting *Guam Resorts, Inc. v. G.C. Corp.*, 2013 Guam 18 ¶ 36). "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the complaint . . . ." *Edwards v. Pac. Fin. Corp.*, 2000 Guam 27 ¶ 7 (citing *Iizuka Corp.*, 1997 Guam 10 ¶ 8). The movant may "[satisfy] and discharge[] its burden by establishing the absence of evidence to support the non-moving party's case." *Kim v. Hong*, 1997 Guam 11 ¶ 6 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the movant discharges its burden, the non-movant "must produce at least some significant probative evidence tending to support the complaint." *Edwards*, 2000 Guam 27 ¶ 7 (citing *Iizuka Corp.*, 1997 Guam 10 ¶ 8). "If the non-movant 'fails to make a showing sufficient to establish the existence of an essential element to that party's case on which that party will bear the burden of proof at trial,' then the movant is entitled to a judgment as a matter of law." *Camacho*, 2017 Guam 16 ¶ 13 (quoting *Alvarez v. Atalig*, Civ. No. 89-00010A, S.C. Civ. No. 0488-87, 1990 WL 320760, at *2 (D. Guam App. Div. Jan 26, 1990)).

### 2. Summary judgment was proper because the Homeowners' claim for setoff fails as a matter of law

[18]     Setoff or offset is a doctrine grounded in equity "requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against the other." 20 Am. Jur. 2d *Counterclaim, Recoupment, Etc.* § 6 (Nov. 2021 Update); *see also* 80 C.J.S. *Set-off and Counterclaim* § 3 (Nov. 2021 Update) ("[Setoff] allows parties that owe mutual debts to each other to assert amounts owed, subtract one from the other, and pay only the balance."); *Hoffman v. Gleason*, 107 F.2d 101, 103 (6th Cir. 1940). The doctrine allows entities that owe debts to each other to apply their mutual debts, "thereby avoiding

'the absurdity of making A pay B when B owes A.'" *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)); *see also Hack v Stang*, No. 13-cv-5713 (AJN), 2015 WL 5139128, at *3 (S.D.N.Y. Sept. 1, 2015). Because of its application, it is generally understood as "a rule of convenience." *Hoffman*, 107 F.2d at 103.

[19]     Unlike the doctrine of recoupment, under which debts between two parties arise out of the same transaction, "[i]n set-off, the mutual debts arise from different transactions." *Malinowski v. N.Y. State Dep't of Lab.*, 156 F.3d 131, 133 (2d Cir. 1998). Therefore, "[s]etoff requires mutuality of the parties, such that 'debts and credits are mutual when they are due to and from same person in same capacity.'" *Jordet v. Jordet*, 2012 ND 231, ¶ 8, 823 N.W.2d 512, 516 (quoting *Collection Ctr., Inc. v. Bydal*, 2011 ND 63, ¶ 44, 795 N.W.2d 667, 680); *see also* 80 C.J.S. *Set-off and Counterclaim* § 66 (Nov. 2021 Update) ("Set-off requires mutuality of the parties, with cross demands for money existing between the parties." (footnotes omitted)); *Newbery Corp.*, 95 F.3d at 1398 ("The defining characteristic of setoff is that 'the mutual debt and claim . . . are generally those arising from *different* transactions.'" (quoting 4 *Collier on Bankruptcy* ¶ 553.03, at 553-14 (15th ed. 1995))). If the debts between two parties are not mutual, then setoff is generally inapplicable. *See Hack*, 2015 WL 5139128, at *5 n.2; *Millenium Env't, Inc. v. City of Long Beach of State of N.Y.*, 827 N.Y.S.2d 171, 175 (App. Div. 2006). Such rationale is not difficult to deduce; applying setoff for non-mutual debts would be counterintuitive.

[20]     Without any recognized exception or statute to the contrary, "as a general rule . . . unliquidated damages cannot be the subject of set-off." *Winder v. Caldwell*, 55 U.S. 434, 443 (1852); *see also United States v. Robeson*, 34 U.S. 319, 325 (1835) ("[A] claim for unliquidated damages cannot be pleaded by way of set-off, in an action between individuals . . . ."); *Warren,*

*Little & Lund, Inc. v. Max J. Kuney Co.*, 796 P.2d 1263, 1264 (Wash. 1990) (en banc) ("[T]he general rule is that unliquidated legal damages cannot be set off either at law or in equity, in the absence of statute." (quoting *Sinclair Refin. Co. v. Midland Oil Co.*, 55 F.2d 42, 47 (4th Cir. 1932))); *Spodek v. Park Prop. Dev. Assocs.*, 693 N.Y.S.2d 199, 200 (App. Div. 1999) ("[T]here is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable."); *Marks v. Spitz*, 4 F.R.D. 348, 350 (D. Mass. 1945) ("The [setoff] claim must be liquidated or capable of liquidation . . . ."); *Hoffman*, 107 F.2d at 104 ("It is generally true that unliquidated damages cannot be the subject of set-off."). This is because "[t]he right of set-off is a natural equity where there are cross demands so that one debt should compensate the other and so that the balance, alone, should be paid by the party who owes the larger debt." *Hoffman*, 107 F.2d at 103. Unliquidated or disputed damages arising from a breach of contract are not considered mutual debts under the setoff doctrine. *See Teledyne Mid-America Corp. v. HOH Corp.*, 486 F.2d 987, 992 (9th Cir. 1973) ("By the weight of modern authority, however, a disputed counterclaim or setoff is sufficient to render an entire transaction 'unliquidated' . . . ." (quoting 1 Williston, *A Treatise on the Law of Contracts* § 129 (3d ed. 1957))); *Duncan v. Lyon*, 3 Johns. Ch. 351, 357-58 (N.Y. Ch. 1818) (setoff inappropriate where one of demanded payments was for wrong or injury rather than liquidated debt due). Thus, a claim for setoff must be liquidated, meaning, it "can be precisely determined by operation of law or by the terms of the parties' agreement" or "has been determined in a judicial proceeding." *Claim (liquidated claim)*, *Black's Law Dictionary* (11th ed. 2019); *see also Slack v. Wilshire Ins. Co.*, 187 F.3d 1070, 1074-75 (9th Cir. 1999) (holding that a liquidated debt is "readily determinable," but if extensive hearing required to determine amount of debt, it is unliquidated).

**[21]**    Related to the rule that unliquidated claims or debts cannot be the subject of setoff is the rule on contingent claims—claims that have not yet accrued and depend on some future event that may never happen. *See Contingent*, *Black's Law Dictionary* (11th ed. 2019). Because they are unliquidated, "[a] contingent or unmatured obligation which is not presently enforceable cannot be the subject of set-off." 80 C.J.S. *Set-off and Counterclaim* § 3; *see also FDIC v. Liberty Nat'l Bank & Tr. Co.*, 806 F.2d 961, 968 (10th Cir. 1986) ("[I]t appears to be the general rule that contingent claims are not a proper subject of setoff."); *City of Milwaukee v. Milwaukee Civic Devs., Inc.*, 239 N.W.2d 44, 51 (Wis. 1976) ("The general law of recoupment and set-off does not embrace contingent claims . . . ."); *Termini v. John Arthur Exhibitions, Inc.*, 169 N.Y.S.2d 584, 588 (Sup. Ct. 1957) ("'[A] possible but unestablished liability, unliquidated in amount' may not be pleaded as an offset to a liquidated claim that is due and payable." (quoting *Dunn v. Uvalde Asphalt Paving Co.*, 67 N.E. 439, 440 (N.Y. 1903))). In explaining the rationale behind this rule, New York's highest court stated:

> [T]here can be no such thing as a right to "set off" a possible but unestablished liability unliquidated in amount, against a liquidated legal claim that is due and payable. This is as obviously impracticable in equity as in law. One of the essentials of equitable set-off is that the demand of the party claiming the right must be due at the time when the ground for equitable intervention arises.

*Dunn*, 67 N.E. at 440.

**[22]**    Under these general rules for setoff, the trial court did not err when it held that the Homeowners may not assert a setoff because its claims were unliquidated, contingent on other litigation, and involved non-mutual parties, while the debt the Homeowners owe Cyfred is liquidated. Rather than explaining its argument in terms of whether the Homeowners' claims for setoff were unliquidated, contingent, or non-mutual, Cyfred argues the trial court's grant of partial summary judgment was proper because the Homeowners "never had a colorable claim to the

attorney's fees underlying their setoff claims."[11] Appellee's Br. at 22. These arguments are similar to the trial court's findings but phrased differently; yet the undisputed facts to support the trial court's findings are clear.

[23]    First, the Homeowners' claim is unliquidated. In their complaint, the Homeowners suggested that Cyfred owed them more than $100,000 in attorney's fees and costs for *UPIC I* and *UPIC II*, and potential attorney's fees for Superior Court Case No. CV0426-18. Both *UPIC I* and *UPIC II*, which were brought by only some of the Homeowners, have been dismissed and closed. And in *UPIC I*, the trial court specifically determined that the plaintiffs, some of whom comprise the Homeowners here, were not prevailing parties entitled to an award of attorney's fees. There will also be a question of whether attorney's fees were incurred on behalf of the Homeowners here and some but not all the Homeowners in CV0426-18, which is still pending before the Superior Court. Because the Homeowners' setoff claim for attorney's fees are still in dispute and are not readily determinable, they are unliquidated and cannot be the subject of setoff, absent an exception. *See Hoffman*, 107 F.2d at 103-04.

[24]    Second, the Homeowners' unliquidated claim is contingent. The validity of the Homeowners' claimed setoff remains contingent on the outcome of CV0426-18, which is still pending before the Superior Court. Cyfred referenced a decision in CV0426-18, not part of the record on appeal, and suggested that the "trial court granted Cyfred summary judgment on all counts" in its favor.[12] Appellee's Br. at 22. This is not true, as the trial court there noted in a

---

[11] On appeal, Cyfred argues an alternative ground for the holding of the trial court, that is, the Homeowners' have unclean hands and are therefore not entitled to equitable relief. Appellee's Br. at 24. While we may affirm summary judgment on those alternative grounds argued by Cyfred, we need not address them here issue because: (1) the record here is insufficient to support the application of the doctrine of unclean hands, and it was not considered by the trial court; and (2) summary judgment was proper on the initial grounds advanced by Cyfred.

[12] We caution the parties that they should be careful in including in the excerpts of record or supplemental excerpts of record items that are not part of the record on appeal, as doing so may be a violation of Guam Rule of Appellate Procedure 15.

separate decision it granted only partial summary judgment, and other live claims remained between Cyfred and the plaintiffs in that action. *See* Peter v. Gill, CV0426-18 (Dec. & Order Def.'s Mot. Entry J. (Apr. 27, 2020)).[13] Nonetheless, the Homeowners' claimed setoff as it relates to the attorney's fees it may be awarded in CV0426-18 is contingent.

[25] Third, the Homeowners' claim is non-mutual. In their complaint, the Homeowners alleged they were owed attorney's fees and costs for *UPIC I* and *UPIC II*, and potential attorney's fees in CV0426-18. All these cases involve persons whose first lots had title issues, while this case involves persons affected by Cyfred's attempt to foreclose on the second lots. Though the groups have some overlap, there is not complete mutuality. And if the debts between two parties are not mutual, then setoff is inapplicable. *See* 80 C.J.S. *Set-off and Counterclaim* § 66 ("Set-off requires mutuality of the parties, with cross demands for money existing between the parties." (footnotes omitted)); *see also Hack*, 2015 WL 5139128, at *5 n.2; *Millenium Env't.*, 827 N.Y.S.2d at 175.

### 3. Exceptions to the general rules of setoff

[26] Because the Homeowners' claims for setoff were unliquidated, non-mutual, and contingent—determinations by the trial court they do not dispute—the Homeowners contend that either of two exceptions should apply. First, calling the exception an "equitable exception" to the common law rules on setoff or the "old rule," they allege that setoff of unliquidated damages should be allowed when the party it is asserted against is insolvent. Appellants' First Am. Br. at 23-31. Second, they allege that a contingent unliquidated claim should be allowed as a setoff under Rule 13(b), which they refer to as the "new rule." *Id.* at 43-50. In so arguing, the Homeowners allege that should the old rule apply, there were issues of material fact as to the trial court's finding

---

[13] We take judicial notice of this decision and the pending nature of CV0426-18. *See* Guam R. Evid. 201; *see also Corpuz*, 2019 Guam 1 ¶ 4 n.2; *In re N.A.*, 2001 Guam 7 ¶ 58 ("It is proper to take judicial notice of court files." (citing *In re S.S.*, 334 N.W.2d at 61)).

that Cyfred was a solvent entity, thus precluding a grant of partial summary judgment. *Id.* at 31-34. And, if the new rule applied, the Homeowners argue the trial court erroneously determined as a matter of law that they could not rely on Rule 13(b) to advance their claims. *Id.* at 49. In response, Cyfred argues the insolvency exception does not apply because it is solvent and that the Homeowners cannot rely on Rule 13(b) since they had brought their claim for setoff as an originating claim and not as a counterclaim. *See* Appellee's Br. at 28-30, 37-39. We agree with Cyfred on these two issues.

### 4. The insolvency exception

[27]     While unliquidated damages as a general matter cannot be the subject of a setoff, the United States Supreme Court recognized that "insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference." *N. Chi. Rolling-Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596, 616 (1894). Many jurisdictions have allowed setoff of an unliquidated claim against a liquidated claim if the party against whom the setoff is asserted is insolvent. *See Warren, Little & Lund*, 796 P.2d at 1264 (listing cases); *Sinclair Refin.*, 55 F.2d at 47; *Hoffman*, 107 F.2d at 103-04; *Nutter v. Occidental Petroleum Land & Dev. Corp.*, 573 P.2d 532, 534 (Ariz. Ct. App. 1977); *S. Sur. Co. of N.Y. v. Maney*, 121 P.2d 295, 298 (Okla. 1941). In *Warren, Little & Lund, Inc. v. Max J. Kuney Co.*, 796 P.2d 1263 (Wash. 1990), the Washington Supreme Court stated: "In the absence of insolvency or some other special ground for equitable relief, the general rule is that unliquidated legal damages cannot be set off either at law or in equity, in the absence of statute." 796 P.2d at 1264 (quoting *Sinclair Refin.*, 55 F.2d at 47). The insolvency of the party against whom a setoff is claimed is a sufficient ground to offset those claims otherwise disallowed because they are unliquidated. *Nutter*, 573 P.2d at 534. Under these circumstances, setoff rests in equity and benefits a party who otherwise has little to no chance of recovering on a debt. *See N. Chi.*

*Rolling-Mill*, 152 U.S. at 616. Given the weight of authority, we adopt the insolvency exception as explained in *Warren, Little & Lund* and hold that setoff of an unliquidated claim may be permitted when the party it is asserted against is insolvent.[14]

### 5.  Under the insolvency exception, summary judgment was still proper

[28]    In the Summary Judgment Order, the trial court assumed that the insolvency exception applied but found that Cyfred was solvent and the Homeowners offered no substantiated evidence to the contrary. The Homeowners allege this was error because there were genuine issues of material fact as to Cyfred's solvency.[15] *See* Appellants' First Am. Br. at 30-31. We disagree with the Homeowners because they failed to set forth specific facts and substantiated evidence to support Cyfred's insolvency.

[29]    Under Guam law, a person is insolvent if he "has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law." 13 GCA § 1201(23) (2005); *see also Insolvent*, *Black's Law Dictionary* (11th ed. 2019) (defining "insolvent" as "having liabilities that exceed the value of assets; having stopped paying debts in the ordinary course of business or being unable to pay them

---

[14] The Homeowners ask the court to adopt the insolvency exception as set forth in *Warren, Little & Lund* and allow setoff of unliquidated claims, though they go further in their brief and suggest the rule should also apply to contingent and non-mutual claims. Appellants' First Am. Br. at 26. The Homeowners, however, provide no significant authority to adopt a rule broader than the exception explained in *Warren, Little & Lund*, which is limited to unliquidated claims. *See* 796 P.2d at 1266. Furthermore, the Homeowners incorrectly suggest the insolvency exception as explained in *North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596 (1894), applies to non-mutual claims. *See* Appellants' First Am. Br. at 29 (stating that term "wholly disconnected transactions" in *North Chicago Rolling-Mill* meant "non-mutual"). *North Chicago Rolling-Mill* does not stand for this proposition.

[15] The Homeowners alternatively allege that summary judgment was improper because Cyfred itself did not show as a matter of law that the Homeowners were not entitled to offset their claims under the insolvency exception. *See* Appellants' First Am. Br. at 30. As explained in footnote 9 above, the Homeowners confuse the burden-shifting mechanism; it was their burden to raise genuine issues of material fact to preclude summary judgment. And even if Cyfred were required to establish its solvency to some degree, it need only point to the complete lack of evidence from the Homeowners in support of their allegations of Cyfred's insolvency. *See Guam Sanko Transp., Inc. v. Pac. Modair Corp.*, 2012 Guam 2 ¶ 7 ("The moving party can satisfy and discharge its burden merely by showing there is an absence of evidence to support the non-moving party's case." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))).

as they fall due"). And under the federal bankruptcy law, a corporation is considered insolvent if its debts exceed the fair value of its property. 11 U.S.C.A. § 101(32)(A) (Westlaw through Pub. L. 117-57 (2021)).

[30]     Rather than offering substantiated evidence to raise issues of fact that Cyfred was insolvent within either meaning explained in 13 GCA § 1201(23), the Homeowners recounted in its opposition to Cyfred's motion for partial summary judgment a history of Cyfred's purported attempts to evade judgments in prior cases, and Cyfred's attempts at bankruptcy before 2011. In support, the Homeowners attached as an exhibit to its opposition to Cyfred's motion for partial summary judgment a complaint filed in 2011 in Superior Court Case No. CV0706-11, purporting to offer facts to suggest that Cyfred is insolvent. But on the central definition of whether Cyfred stopped paying its debts, could not pay its debts, or was insolvent under the federal bankruptcy law, when the Homeowners alleged the setoff of attorney's fees in 2018, they offered no substantiated evidence. As the trial court noted, the alleged facts which the Homeowners use as an attempt to create a material factual dispute about Cyfred's solvency predate the 2013 settlement agreement. Even on appeal, the only factual dispute the Homeowners raise is that "Cyfred's debts probably were at least $281,661.91 and the value of its property probably was . . . around $168,000, which would make it insolvent under Guam Law." Appellants' First Am. Br. at 31. Such allegations are speculative and are not enough to raise a genuine issue of material fact that would preclude the grant of summary judgment.

[31]     The established undisputed facts also reveal that Cyfred is likely solvent. Cyfred holds the mortgages to the second lots it seeks to foreclose and has foreclosed on some second lots, which Cyfred bought at non-judicial foreclosure sales. And the record indicates that "[t]here is no outstanding award of any kind and no judgment for attorney's fees whatsoever which is currently

owed by Cyfred to any of the [Homeowners] in any action or in any court." RA, tab 56 at 2 (Decl. Francis Gill). Thus, the Homeowners cannot demonstrate that Cyfred has stopped paying its debts, i.e., the alleged attorney's fees, in the ordinary course of business or cannot pay its debts as they become due. And even if some evidence were proffered, so the Homeowners could create a factual dispute about Cyfred's solvency, the exception does not overcome the general rule that setoff is inappropriate if the parties are not mutual or if the amounts are contingent. As discussed, the Homeowners' alleged setoffs are not just unliquidated, but also contingent and non-mutual, and they present no arguments or authority on how application of the insolvency exception in their favor would overcome these other barriers to setoff.

### 6. The Homeowners could not rely on Rule 13(b)

[32]     The Homeowners also contend that, under what they refer to as the "new rule" elucidated in *Warren, Little & Lund*, a contingent, unliquidated, non-mutual claim should be allowed as a setoff under Rule 13(b). Appellants' First Am. Br. at 43-50. In so arguing, the Homeowners allege the trial court erroneously determined that they could not rely on Rule 13(b) to advance their claims. In response, Cyfred argues that Rule 13(b) involves permissive counterclaims and is inapplicable under the circumstances. Appellee's Br. at 37-39. We agree with Cyfred because the Homeowners' reliance on *Warren, Little & Lund* is inappropriate for two reasons. First, there is no procedural parallel between *Warren, Little & Lund* (or other cases cited by the Homeowners) and the current matter; and second, even if Rule 13(b) were construed to benefit the Homeowners in advancing their contingent and unliquidated claims, it still fails to overcome the requirement of mutuality of the parties to validly assert a setoff.

[33]     In *Warren, Little & Lund*, the defendant sought by permissive counterclaim a setoff that was contingent and unliquidated against the plaintiff's liquidated claim. 796 P.2d at 1264. Relying

on its own Rule of Civil Procedure 13(b) ("CR 13(b)"), the Washington counterpart to our Rule 13(b), the court held that "a contingent unliquidated counterclaim may be pleaded as a setoff unless the plaintiff can show prejudice or the court finds the counterclaim would make the proceedings unwieldy." *Id.* at 1265-66. The court reasoned that allowing the pleading of contingent unliquidated counterclaims furthers the objective of CR 13(b) and its counterpart federal rule "to provide complete relief to the parties, to conserve judicial resources and to avoid the proliferation of lawsuits." *Id.* at 1266 (quoting *Tallman v. Durussel*, 721 P.2d 985, 988 (Wash. Ct. App. 1986)).

[34]    While the provision for permissive counterclaims in Rule 13(b) mirrors CR 13(b) and the counterpart federal rule, there is no procedural parallel between *Warren, Little & Lund* and this matter. The Homeowners recognize the procedural flaw in their reliance on Rule 13(b) and recognize they could have alleged their setoff claims as permissive counterclaims had Cyfred brought original actions against them, i.e., judicial foreclosures. Appellants' First Am. Br. at 49. This may be true; however, the Homeowners here asserted the setoff of an admittedly contingent, unliquidated, non-mutual claim as an original action, not as a permissive counterclaim. Rule 13(b) and the central holding of *Warren, Little & Lund* is therefore unavailable to the Homeowners as a method to preclude summary judgment under the circumstances. Even if we were to reimagine the Homeowners' action as a permissive counterclaim and adopt the holding in *Warren, Little & Lund*, so that a contingent, unliquidated counterclaim may be pleaded as a setoff, the Homeowners still fail to overcome the requirement there be mutuality of the parties for a setoff to be permissible. *See supra* Part IV(A)(2).

**B. The Trial Court Did Not Abuse its Discretion in Denying the Homeowner's Reconsideration Motion**

[35]    As for the Reconsideration Order, the Homeowners maintain the trial court erred in refusing to find applicable other grounds for their setoff claim; specifically, that Cyfred's ability

to become insolvent is a special ground for equitable relief allowing setoff and their claim of equitable estoppel. Appellants' First Am. Br at 19. Neither argument is a sufficient basis for reconsideration. Thus, the trial court did not abuse its discretion in denying the reconsideration motion.

[36]     We have adopted three instances that each justify reconsideration under Guam Rule of Civil Procedure 59(e), which include situations "where the trial court: (1) is presented with new evidence; (2) committed clear error or the decision was manifestly unjust[;] or (3) if there is an intervening change in controlling law." *Camacho*, 2017 Guam 16 ¶ 39 (alteration in original) (quoting *DFS Guam*, 2014 Guam 12 ¶ 21). "Clear error is found where the appellate court determines that a trial court could not rationally have decided as it did." *DFS Guam*, 2014 Guam 12 ¶ 22.

[37]     In their reconsideration motion and on appeal, the Homeowners suggest that Cyfred's demonstrated ability to become insolvent quickly or improperly is a special ground for equitable relief allowing setoff. RA, tab 78 at 4-6 (Pls.' Mem. Supp. Mot. New Trial, or, in Alternative, Recons., Mar. 22, 2019); Appellants' First Am. Br. at 19, 27 & n.10. In support, the Homeowners offered no case law or authority— either before the trial court or this court—providing for the creation of a new equitable exception that allows setoff of an unliquidated claim against a potentially insolvent party, rather than an insolvent party. And in their opposition to Cyfred's motion for partial summary judgment, the Homeowners were unclear of the existence of such an exception, stating that Cyfred's "ability to become insolvent quickly" was "*probably* a special ground for equitable relief." RA, tab 63 at 13 (Pls.' Mem. Opp'n Def.'s Mot. Partial Summ. J., Feb. 8, 2019) (emphasis added).

[38]     The Homeowners' suggestion on appeal that "the lack of case law" was not an appropriate reason for the trial court to deny application of the equitable exception ignores that such an exception was limited in application against insolvent parties rather than those who are potentially insolvent or can become insolvent. Because the Homeowners' argument of an alternative ground for equitable relief is a supplement and repeat of arguments made before the trial court about Cyfred's alleged insolvency, it is not a sufficient basis for reconsideration. *See Lujan v. Estate of Rosario*, 2016 Guam 28 ¶ 14 ("Rule 59(e) motions are both 'procedurally and substantively deficient' if they simply reiterate in greater detail arguments previously made before the court." (quoting *Maquera*, 2001 Guam 20 ¶ 9)). It was not an abuse of discretion for the trial court to deny reconsideration on this basis because the Homeowners provided no authority to support the application of an equitable exception.

[39]     The Homeowners also allege that the trial court, in considering their reconsideration motion, "erroneously misapprehended what needed to be pleaded as to equitable estoppel and erroneously determined that they were not entitled to assert such bar because it was inadequately pleaded."[16]   Appellants' First Am. Br. at 35. The trial court's determinations of this issue,[17] however, may have been improper because "[m]otions made under Rule 59(e) are aimed at reconsideration, not initial consideration, and thus cannot be used to present a new legal theory,

---

[16] In summary, the Homeowners' estoppel claim is that Cyfred should be estopped from conducting non-judicial foreclosures because it had represented to them that it would undertake judicial rather than non-judicial foreclosures. *See* Appellants' First Am. Br. at 36-38.

[17] In their opposition to Cyfred's motion for partial summary judgment, the Homeowners stated they "asserted their equitable estoppel contentions only as an alternative basis to stay the nonjudicial foreclosures and/or [to] set aside those that had been conducted after such estoppel." RA, tab 63 at 13-14 (Pls.' Mem. Opp'n Def.'s Mot. Partial Summ. J., Feb. 8, 2019). The Homeowners also stated that "[t]hey did not assert [the equitable estoppel claims] offensively, to obtain any damages. They asserted them defensively, to avoid the nonjudicial foreclosure sales." *Id.* at 14. And because the trial court had issued a stay of the foreclosures, the Homeowners suggested that their estoppel arguments may be "moot because th[e] Court already granted such stay." *Id.* Relying on these representations, the trial court declined to consider the Homeowners' claim for estoppel in its Summary Judgment Order. *See* RA, tab 73 at 4 n.2 (Summ. J. Order).

raise arguments for the first time, or present evidence for the first time when they could have reasonably been raised earlier." *Estate of Rosario*, 2016 Guam 28 ¶ 14 (quoting *Maquera*, 2001 Guam 20 ¶ 9). The trial court did not err in denying the Homeowner's reconsideration motion on this basis.

[40] "Equitable estoppel is defined as [t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had." *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9 ¶ 24 (alteration in original) (quoting *Heskett v. Paulig*, 722 N.E.2d 142, 145-46 (Ohio Ct. App. 1999)). To assert equitable estoppel, parties have the burden of satisfying these four elements:

> (1) the party to be estopped must be apprised of the facts;
>
> (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;
>
> (3) the party asserting the estoppel must be ignorant of the true state of the facts; and
>
> (4) he must rely upon the conduct to his injury.

*Id.* ¶ 24 (quoting *Crestline Mobile Homes Mfg. Co. v. Pac. Fin. Corp.*, 356 P.2d 192, 195-96 (Cal. 1960) (in bank)).

[41] Because the undisputed facts show that Cyfred had the option under the notes and mortgages it had with each of the Homeowners to foreclose by non-judicial foreclosure on the second lots if a default occurs, the trial court properly determined the Homeowners "have failed to allege they were 'ignorant of the true state of the facts'" and thus cannot meet the requirements to assert equitable estoppel. RA, tab 89 at 7 (Dec. & Order Mot. New Trial, or, in Alternative, Recons., June 20, 2019). Given the rational basis for the trial court's decision, it did not abuse its discretion in denying the Homeowners' reconsideration motion.

## V.  CONCLUSION

**[42]**     We **AFFIRM** the grant of partial summary judgment and all the related orders originating

from it.

<table>
<tr>
<td style="text-align:center">/s/<br>ROBERT J. TORRES<br>Associate Justice</td>
<td style="text-align:center">/s/<br>KATHERINE A. MARAMAN<br>Associate Justice</td>
</tr>
</table>

/s/
F. PHILIP CARBULLIDO
Chief Justice
